FILED
2019 Jul-17  PM 03:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| ANNA CARROLL, individually and on behalf of others similarly situated | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO: 2:18-CV-01060-RDP ) |
| MACY'S INC., MACY'S RETAIL HOLDINGS, INC., and MACY'S SYSTEMS AND TECHNOLOGY, INC., | ) ) ) ) |
| Defendants. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT[1]**

**I. PRELIMINARY STATEMENT**

Plaintiff Anna Carroll ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, respectfully submits this brief in support of her Motion for Preliminary Approval ("Motion") pursuant to Federal Rule of Civil Procedure 23(e) and for entry of the proposed Preliminary Approval Order (attached hereto as Exhibit E), and the proposed Judgment (attached hereto as Exhibit F) which will, among other things: (1) preliminarily approve the Class Action Settlement Agreement ("Agreement" or "Settlement Agreement"); (2) preliminarily certify the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only; (3) approve the form and method of notice to the Settlement Class; (4) appoint the undersigned as Class Counsel; and (5) set a date and time for a hearing (the

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement, which is being filed concurrently herewith.

"Final Approval Hearing") for the Court to consider whether to grant final approval of the Agreement, the payment of attorneys' fees, costs and expenses, and the payment of an incentive award to Plaintiff.[2]

Plaintiff requests that the Motion, which Macy's Inc., Macy's Retail Holdings, Inc., and Macy's Systems and Technology, Inc. (collectively, "Macy's") do not oppose, be granted, because the Settlement Agreement provides substantial relief to the Settlement Class, meets all of the standards for preliminarily approval, and satisfies the requirements of Federal Rule of Civil Procedure 23 and due process.

## II. STATEMENT OF FACTS AND SETTLEMENT OVERVIEW

### A.    Factual Background and Procedural History

Macy's is a retail department store selling merchandise to the public through its brick and mortar stores as well as through its online store at www.macys.com.  A Cyber Attack on Macy's occurred from May 1, 2018, through June 11, 2018, involving unauthorized access or unauthorized attempted access to online customer profiles, and Personal Information associated with those profiles, using valid user credentials.  In July 2018, Plaintiff and Settlement Class Members were notified by Macy's of the Cyber Attack.  On July 9, 2018, Plaintiff filed her initial complaint in this Court.  Plaintiff filed an amended complaint on October 19, 2018 (the "Complaint").[3]  On November 2, 2018, Macy's filed its motion to dismiss, and on December 21, 2018, Plaintiff filed her opposition to it.  On January 30, 2019, the Parties mediated their dispute and reached a

---

[2] The Parties respectfully request that the Court set the Final Approval Hearing at a time consistent with the schedule at the end of the proposed Preliminary Approval Order.

[3] Macy's denies all material allegations in the Complaint, and Macy's specifically denies that it is in any way liable for the Cyber Attack.  Nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, Macy's has agreed to settle this litigation on the terms set forth in the Settlement Agreement, subject to this Court's approval.

settlement in principle after a full-day mediation session with JAMS mediator Jeffrey Grubman, Esq. in Miami, Florida.   The settlement resulted from hard-fought, good faith, arm's-length settlement negotiations.   Prior to and during this mediation, Macy's shared specific and detailed information with Class Counsel regarding the Cyber Attack.   In addition, prior to the mediation the Parties also participated in numerous direct discussions about possible resolution of the Litigation but were unable to reach a settlement.   Since the mediation, the Parties have worked diligently to finalize the Settlement Agreement.

**B.      Terms of the Proposed Settlement**

The proposed settlement seeks to resolve the claims of all individuals to whom Macy's sent notice of the Cyber Attack in July 2018.[4]   In particular, the settlement will provide significant and valuable benefits to Settlement Class Members and will squarely address the issues raised in the Litigation.   The settlement will provide monetary payments to Settlement Class Members who submit valid Claim Forms.   Settlement Class Members submitting valid Claim Forms have two options to receive a monetary payment:

1.  <u>Documented Expenses and Lost Time:</u> Reimbursement for documented out-of-pocket expenses and lost time that were incurred as a result of the Cyber Attack for one or more of the following, not to exceed a total of $1,500.00 per Settlement Class Member: (i) costs and expenses spent addressing identity theft or fraud; (ii) preventative costs including purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review; (iii) other documented losses that were

---

[4] The Settlement Agreement defines the Settlement Class as "all residents of the United States who Macy's sent a notification in July 2018 concerning suspected unauthorized activity as a result of the Cyber Attack."  *See* Ex. 1 (Settlement Agreement) § 1.20.

not reimbursed; and (iv) up to five hours of documented time spent dealing with the repercussions of the Cyber Attack (calculated at the rate of $15.00 per hour); and/or

2. <u>Undocumented Time Spent:</u> Any Settlement Class Member who spent time dealing with repercussions of the Cyber Attack, but does not have documentation of such time, will be eligible to submit a Settlement Claim for time spent in an amount of $15 per hour up to two hours (for a total of $30).

Settlement Class Members who submit a valid Claim Form are eligible to seek reimbursement under both option "1" and "2" above for an amount not to exceed a total of $1,530. The Claim Form provides detailed and easy to understand information on the types of documentation required under option "1." *See* Exhibit A (Claim Form).  For all Approved Claims, Macy's shall pay a total of $192,500.  Notably, Macy's will pay attorneys' fees, costs and expenses, and a service award as set forth in the Settlement *on top of this amount*.[5]

As part of the consideration for this Settlement Agreement, upon final approval, it is agreed that Plaintiff and all Settlement Class Members who do not validly opt out shall be deemed to have released all claims against Macy's based on, relating to, concerning, or arising out of the Cyber Attack or the allegations, facts, or circumstances described in the Litigation and/or Complaint, as set forth in more detail in Section VII of the Settlement Agreement.

The settlement allows Class Counsel to request a service award to Plaintiff of up to $2,500 for her service on behalf of the Settlement Class.  Plaintiff's consent to the settlement is not conditioned in any manner on the award of a service award or its amount. Plaintiff has given her time and accepted her responsibilities,

---

[5] Specifically, on top of the $192,500 to pay all Approved Claims, Macy's has agreed to pay up to $60,000 in attorneys' fees, up to $2,500 in costs and expenses, and up to $2,500 as an incentive award to Plaintiff.

participating actively in this Litigation, including during the mediation, as required and in a manner beneficial to the Settlement Class generally.

Macy's will not oppose any applications for an award of reasonable attorneys' fees up to $60,000 and costs and expenses up to $2,500.  Notably, the Parties did not negotiate attorneys' fees or costs and expenses until the Parties had reached an agreement on Settlement Class relief.  In addition, the award of attorneys' fees and costs and expenses does not reduce or otherwise affect the benefits available to Settlement Class Members, as noted above. Plaintiff's request for attorneys' fees and costs and expenses will be presented to the Court in Plaintiff's motion for approval of attorneys' fees and expenses. This motion will be filed at least 30 days prior to the Final Approval Hearing.

**C.     Class Notice**

**1.       *Direct Notice Will be Provided To Settlement Class Members.***

Subject to the Court's approval, the Parties propose (1) to send Settlement Class Members an email containing the Summary Notice and a link to the Settlement Website (on which the Settlement Class Members may submit claims electronically); (2) for Settlement Class Members for which an email address is unavailable, to send the Summary Postcard Notice via U.S. mail; and (3) in the event of an email notice "bounceback," the Settlement Administrator shall send the Settlement Class Member the Summary Postcard Notice via U.S. mail.  Copies of the proposed Summary Notice and Summary Postcard Notice are attached hereto as Exhibit B (Summary Notice) and G, (Summary Postcard Notice).

**2.       *The Settlement Website***

The Settlement Administrator shall establish a dedicated Settlement Website and shall maintain and update the website throughout the Claims Period, with the Summary Notice, Long

Notice, and Claim Form approved by the Court, as well as this Settlement Agreement. *See* Exs. B (Summary Notice), C (Long Notice), and A (Claim Form).

>    ***3.     A Toll-Free Help Line Will Be Established for Settlement Class Members.***

The Settlement Administrator shall also establish a toll-free help line to address Settlement Class Members' inquiries. The Settlement Administrator also will provide copies of the Long Notice and Claim Form approved by the Court to Settlement Class Members upon request.

>    **D.     Exclusion and Opt Outs**

Each Settlement Class Member wishing to opt out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator. The written opt out notice must clearly manifest a person's intent to be excluded from the Settlement Class, be sent via first class postage pre-paid United States mail, and satisfy all of the requirements set forth below.

The written opt out notice must include the individual's name and address; the name of this Litigation (i.e., *Anna Carroll v. Macy's Inc. et al.*, Case No. 2:18-cv-01060-RDP (N.D. Ala.)), the words "Request for Exclusion" or a clear statement that he or she wants to be excluded from the Settlement Class; and the individual's signature. The Settlement Administrator shall, upon receipt, promptly provide the Parties with copies of all completed opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which per the terms of the Settlement Agreement, Class Counsel or Macy's may move to file under seal with the Court no later than 10 days prior to the final approval hearing. To be effective, written opt out notice must be postmarked no later than 135 days from the date of preliminary approval. All persons who submit valid and timely notices of their intent to be excluded from the Settlement Class shall not receive any benefits of or be bound by the terms of the Settlement Agreement. All

Settlement Class Members who do not submit valid and timely notices of their intent to be excluded from the Settlement Class shall be bound by the terms of the Settlement Agreement and the Judgment entered thereon.

      **E.**      **Objections**

Each Settlement Class Member desiring to object to the Settlement Agreement must submit a timely written notice of his or her objection.  Such notice shall state: (i) the name of this Litigation (i.e., *Anna Carroll v. Macy's Inc. et al.*, Case No. 2:18-cv-01060-RDP (N.D. Ala.); (ii) the objector's full name, address, telephone number, and e-mail address (if any); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of all counsel representing the objector; (vi) the identity of all counsel representing the objector who will appear at the final approval hearing; (vii) a list of all persons who will be called to testify at the final approval hearing in support of the objection; (viii) a statement confirming whether the objector intends to personally appear and/or testify at the final approval hearing; (ix) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation); (x) a list, by case name, court, and docket number, of all other cases in which the objector (directly or through counsel) has filed an objection to any proposed class action settlement within the last 3 years; (xi) a list, by case name, court, and docket number, of all other cases in which the objector's counsel (on behalf of any person or entity) has filed an objection to any proposed class action settlement within the last 3 years; and (xii) a list, by case name, court, and docket number, of all other cases in which the objector has been a named plaintiff in any class action or served as a lead plaintiff or

class representative. To be timely, written notice of an objection in the appropriate form must be electronically filed in the Litigation's electronic docket via CM/ECF no later than 135 days from the date of preliminary approval, or if not electronically filed, sent via first class, postage-prepaid United States mail, postmarked no later than 135 days from the date of preliminary approval, to (a) the Clerk of Court, (b) Class Counsel, and (c) counsel for Macy's.

## III. ARGUMENT AND CITATION TO AUTHORITIES

### A.      Legal Principles Governing Preliminary Approval

A court must approve any class action settlement that releases the claims of absent class members.  *See* Fed. R. Civ. P. 23(e).  Review of a proposed settlement generally proceeds in two stages: first, a hearing on preliminary approval, followed by a second hearing, on final approval. *See* MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004); Rule 23(e)(2).

At the preliminary approval stage, a court conducts a preliminary review to determine whether the proposed settlement is "within the range of possible approval."  *Fresco v. Auto Data Direct, Inc.*, 2007 WL 2330895, at *4 (S.D. Fla. May 11, 2007) (internal citations omitted).  "[T]he court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." 4 W. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:10 (5th ed. 2015); MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004). After preliminary approval and notice to the class, the Court assesses the settlement's strengths and weaknesses at the final approval hearing and determines whether the settlement is fair, reasonable, and adequate to those who are affected. *See Fresco*, 2007 WL 2330895, at *4; MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004).

The law generally encourages settlement.  *See Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("[O]ur judgment is informed by the strong judicial policy favoring settlement as

well as by the realization the compromise is the essence of settlement."); *see also Williams v. First Nat'l Bank of Pauls Valley*, 216 U.S. 582, 595 (1910) ("[C]ompromises of disputed claims are favored by the courts."). Furthermore, "settlements of class actions are highly favored in the law and will be upheld whenever possible because they are means of amicably resolving doubts and preventing lawsuits." *Carnegie v. Mut. Sav. Life Ins. Co.*, Civ-99-S-3292-NE, 2004 WL 3715446, at *17 (N.D. Ala. Nov. 23, 2004) (citations omitted).

In determining whether preliminary approval is warranted, the issue before the Court is whether the settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the settlement should be given to the settlement class, and a hearing scheduled to consider final settlement approval. The Court is not required at this point to make a final determination as to the fairness of the Agreement—that decision is made only at the final approval stage, after notice of the settlement has been provided to the Settlement Class, and they have had an opportunity to voice their views of the settlement. *See* 3B J.W. Moore, MOORE'S FEDERAL PRACTICE (2d ed. 1996) ¶ 23.80[2.-1] at 23-479. Courts have noted that the standard for preliminary approval is less rigorous than the analysis at final approval. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 855 F. Supp. 825, 827 (E.D.N.C. 1994) (explaining that the issue at preliminary approval stage is whether there is "probable cause" to justify notifying class members of proposed settlement); *In re Bromine Antitrust Litig*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (the "bar [for obtaining preliminary approval] is low").

**B.     Approval of the Proposal Under Rule 23(e)(2)**

Rule 23(e)(2) states that the Court may approve the proposal after considering whether: (a) the class representatives and class counsel have adequately represented the class; (b) the proposal

was negotiated at arm's length; (c) the relief provided for the class is adequate; and (d) the proposal treats class members equitably relative to each other.

First, as explained in greater detail below, the Plaintiff and Class Counsel have adequately represented the Settlement Class. Plaintiff does not have any interests antagonistic to other class members and has retained lawyers with the necessary qualifications and experience to lead this litigation. *See, e.g.*, *Parsons v. Brighthouse Networks, LLC*, 2:09-CV-267-AKK, 2015 WL 13629647, at *12 (N.D. Ala. Feb. 5, 2015) ("This is not a case in which a complaint has been filed and the parties have rushed to a settlement. Thus, all Parties had a keen grasp of the issues, the factual underpinnings of the claims and defenses herein, and the measure of the evidence supporting those claims and defenses."). Second, the proposed settlement was negotiated at arm's length and without collusion. Indeed, the settlement was reached only after a hard-fought mediation with a respected JAMS mediator and then subsequently finalized through multiple rounds of discussions. *See, e.g.*, *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness"). Third, as explained in greater detail below, the relief provided for the Settlement Class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, and the terms of the proposed award of attorney fees. Finally, the proposal treats class members equitably relative to each other. Each Settlement Class Member who submits appropriate documentation for reimbursable losses may seek up to $1,500, and each Settlement Class Member who has spent time dealing with the repercussions of the Cyber Attack may seek up to two hours of time at $15 per hour without any documentation required. These two awards may be combined, where appropriate, for a combined total of up to $1,530, subject to a pro

rata increase or decrease (applied equally and evenly) depending on the total amount of claims made.

Moreover, pursuant to Federal Rule of Civil Procedure 23(e)(1), the information set forth herein and in the attachments is sufficient for the Court to determine whether to give notice to the class. For the reasons set forth above, the Court will likely be able to approve the proposal under Rule 23(e)(2), and certify the class for purposes of judgment on the proposal. The settlement satisfies all of the requirements for certification under Rule 23, provides significant benefits, and provides clear notice to Settlement Class Members informing them of the Settlement Agreement, how to claim settlement benefits, and the procedures for opting out or objecting to the settlement.

### C.     The Eleventh Circuit's Standards Governing Class Action Settlements

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, before a class action may be settled, voluntarily dismissed or compromised, the court must determine whether the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(A); *see also Carnegie*, 2004 WL 3715446, at *17 ("It is well settled that in order to approve a settlement, the district court must find that it is fair, adequate and reasonable and is not the product of collusion between the parties.") (quoting *Bennett*, 737 F.2d at 986).

As is the case with final approval, a court has wide discretion in making the first-stage determination of the appropriateness of a settlement. The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc*., 450 U.S. 79, 88 n.14 (1981).

Courts within the Eleventh Circuit apply the *Bennett* factors in considering whether to preliminarily approve a proposed settlement:

> (1) The likelihood of success at trial; (2) the range of possible recoveries; (3) the point on or below the range of possible recoveries at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of the litigation; (5) the substance and degree of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Carnegie*, 2004 WL 3715446, at *17-18 (quoting *Bennett*, 737 F.2d at 986); *see also Parsons*, 2015 WL 13629647, at *2. The *Bennett* factors support preliminary approval.

### 1.      The Benefits of Settlement Outweigh the Risks at Trial

The trial court weighs the first *Bennett* factor, the likelihood of success at trial, "against the amount and the form of relief contained in the settlement." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014). This factor weighs in favor of approval where there was "no guarantee that the plaintiffs would prevail at trial on their [] claims." *Camp v. City of Pelham*, 2:10-CV-01270-MHH, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014); *see also Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800, 2013 WL 10167232, at *6 (S.D. Fla. Oct. 7, 2013) (granting approval where "success at trial is not certain for Plaintiff[s]."). Although Plaintiffs are confident about their case, the risks involved cannot be disregarded, and success cannot be guaranteed. *See generally In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1334 (N.D. Ga. 2000) ("[T]he trial process is always fraught with uncertainty."). This is particularly true where, as here, the case "involves complex legal and factual issues that have been hotly contested, and would almost certainly continue to be hotly contested throughout the remaining litigation" and "the ultimately outcome on the merits were uncertain for both Parties." *See Parsons*, 2015 WL 13629647, at *3. The proposed Agreement avoids these uncertainties and provides the Settlement Class with meaningful and certain relief.

### 2.  *The Settlement is Within the Range of Possible Recoveries and Is Fair, Adequate, and Reasonable*

The second and third *Bennett* factors—whether the settlement is within the range of possible recoveries and is fair, adequate, and reasonable—are "easily combined and normally considered in concert." *Camp*, 2014 WL 1764919, at \*3. "The Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but to evaluate the proposed settlement in its totality." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005). The range of outcomes extends from no liability to total victory and must be considered in light of the attendant risks. *See, e.g.*, *Beaty v. Contl. Auto. Sys. U.S., Inc.*, CV-10-S-2440-NE, 2012 WL 12895014, at \*8 (N.D. Ala. Feb. 6, 2012). Thus, even a minimal settlement can be approved. *See, e.g.*, *Burrows*, 2013 WL 10167232, at \*6; *Bennett*, 737 F.2d at 986; *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

The settlement is within the range of possible recoveries, considering the risks.  The settlement avoids the risks of prolonged litigation, and provides class members with certain, immediate relief.  Indeed, it provides Settlement Class Members with relief for time spent dealing with the repercussions of the Cyber Attack (for up to two hours at $15/hour) even if the Settlement Class Members do not have any documentation.  Thus, the Agreement is fair, adequate, and reasonable, based on the range of possible recovery.

### 3.  *Continued Litigation Would Be Expensive and Lengthy.*

A settlement that "will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits approval. *Lipuma*, 406 F. Supp. 2d at 1324. Such is the case here. Approval will

avoid complex, expensive, and lengthy litigation, saving resources of the parties and the Court. *See, e.g.*, *Parsons*, 2015 WL 13629647, at \*4. A national class action such as this one involves seemingly endless discovery; extensive expert involvement; argument and voluminous briefing over certification, summary judgment, and *Daubert* challenges; a lengthy trial; and appeals. The Agreement resolves the case without any further delay and will, if finally approved, offer Settlement Class Members an immediate and certain recovery. Thus, this factor also strongly favors of preliminary approval of the settlement.

### 4.      *The Degree of Opposition to the Settlement*

Courts do not consider this factor until notice has been provided to settlement class members. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 560 (N.D. Ga. 2007).

### 5.      *The Stage of Proceedings*

Courts look at the last *Bennett* factor "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324. Courts have approved settlements at much earlier stages of litigation. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement). Plaintiff and Class Counsel have litigated this case at the pleadings stage, thoroughly investigated the facts and law, briefed the relevant legal issues, and reviewed substantive evidence relating to the claims and defenses. *See Parsons*, 2015 WL 13629647, at \*12 ("This is not a case in which a complaint has been filed and the parties have rushed to a settlement. Thus, all Parties had a keen grasp of the

issues, the factual underpinnings of the claims and defenses herein, and the measure of the evidence supporting those claims and defenses."). Settlement here is not premature.

**D.    Conditional Certification of the Settlement Class Under Rule 23(b)(3) for Settlement Purposes is Appropriate.**

When a settlement is reached before certification, a court must determine whether to certify the settlement class. *See, e.g.*, MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2014); *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Certification of a settlement class is proper when the requirements of Rule 23(a) and at least *one* subsection of Rule 23(b) are satisfied. *See, e.g.*, C*olumbus Drywall*, 258 F.R.D. at 553. Courts have "broad discretion" in applying Rule 23 to a settlement class. *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). This case meets the four prerequisites of Rule 23(a) necessary for class certification: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). In addition, the case satisfies the requirements of Rule 23(b)(3): predominance of common issues and superiority of a class action.

### *1.    The Settlement Class Satisfies Rule 23(a)*

Fed. R. Civ. P. 23(a) establishes four prerequisites to certification of any class: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) the claims raise common questions of law or fact ("commonality"); (3) the claims or defenses of the proposed representatives are typical of those of the class ("typicality"); and (4) the representative parties can fairly and adequately protect the interests of the class ("adequacy"). The Settlement Class here satisfies each of these prerequisites.

a.    Numerosity Is Met.

Rule 23(a)(1) provides that a class action is maintainable only if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "When class size reaches substantial proportions . . . , the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (citing 1 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS, § 3.01, at 3-4 (3d ed. 1992)). The Eleventh Circuit's general rule is that "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." *See, e.g.*, *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommunications, Inc*., 275 F.R.D. 638, 642 (M.D. Fla. 2011) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  Here, there are approximately 163,000 members of the Settlement Class, which is more than sufficient to meet the numerosity requirement under Rule 23(a)(1).

b.    Commonality Is Met.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality focuses on the relationship of common facts and legal issues among class members.   H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS, § 3:10 at 271 (4th ed. 2002).  "[F]or purposes of Rule 23(a)(2), '[e]ven a single [common] question' will do." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2566 (2011). The commonality requirement is easily met here. The commonality requirement requires only that there be questions of law or fact common to the class, not to be confused with the higher "predominance" requirement of Rule 23(b)(3). *See Vega v. T-Mobile USA, Inc*., 564 F.3d 1256, 1268 (11th Cir. 2009). Rule 23(a)(2) "does not require that *all* . . . questions of law and fact raised by the dispute be common." *Beaty*, 2012 WL 12895014, at *4 (quoting *Cox*, 784 F.2d at 1557). "[C]ommonality requires 'that there be at least one issue

whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal citation omitted).

Here, each member of the Settlement Class was sent a notice from Macy's concerning suspected unauthorized activity with their online profiles as a result of the Cyber Attack.  And each Settlement Class Members' claims arise out of the Cyber Attack.  As a result, the commonality requirement is satisfied because there are multiple questions of law and fact that are common to the Settlement Class, including:

- Did Macy's act contrary to the law with respect to the Cyber Attack?

- Was the Personal Information taken during the Cyber Attack confidential and proprietary such that Plaintiff and members of the Settlement Class had a reasonable expectation that Macy's would keep it confidential?

- Was Macy's liable to Plaintiff and the Settlement Class for damages Plaintiff and members of the Settlement Class suffered?

c.    <u>Typicality is Met.</u>

Rule 23(a)(3) requires that the representative plaintiffs' claims be typical of those of the claims of the other settlement class members.  *See* Fed. R. Civ. P. 23(a)(3).  A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to . . . the same legal theory." The typicality requirement primarily focuses on whether the named plaintiffs' claims "have the same essential characteristics" as claims of other class members. *See, e.g.*, *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). The requirement requires only some nexus between the named plaintiff's claims and the common questions uniting the class. *See, e.g.*, *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). A sufficient nexus exists if the claims

arise from the same pattern of conduct and there is a similarity of legal theories. *See, e.g.*, *Williams*, 568 F.3d at 1357.

Here, Plaintiff's and the Settlement Class's claims arise from the same Cyber Attack. Macy's sent notice to each member of the Settlement Class concerning suspected unauthorized activity in the same manner, during the same time period, and as a result of the same Cyber Attack. Thus, Plaintiff's claims are typical of the claims of the other Settlement Class Members.[6]

> d.   Adequacy Is Met.

Finally, Rule 23(a)(4) requires that the named plaintiffs "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In assessing the adequacy requirement, courts employ "a two-part test: (1) whether plaintiffs have interests antagonistic to the interests of other class members; and (2) whether the proposed class' counsel has the necessary qualifications and experience to lead the litigation." *Columbus Drywall*, 258 F.R.D. at 555. Here, Plaintiff has no interests antagonistic to the other Settlement Class Members' interests.  She has fulfilled, and will continue to fulfill, her duty to the Settlement Class by remaining informed of the Litigation and its developments, reviewing relevant information, providing informal discovery related to the

---

[6] Note that Article III's "injury-in-fact" requirement may be satisfied for the entire settlement class where one plaintiff has established standing. 1 NEWBERG ON CLASS ACTIONS § 2.05 at 2–29 ("Once threshold individual standing by the class representative is met, a proper party to raise a particular issue is before the court, and there remains no further separate class standing requirement in the constitutional sense."); *see also In re: Takata Airbag Products Liab. Litig.*, 14-24009-CV, 2016 WL 6072406, at *8 (S.D. Fla. Oct. 14, 2016) ("A class action can be maintained by one class representative with proper standing.") (citations omitted); *see also Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 362 (3d Cir. 2015) ("We now squarely hold that unnamed, putative class members need not establish Article III standing. Instead, the 'cases or controversies' requirement is satisfied so long as a class representative has standing, whether in the context of a settlement or litigation class."); *In re Nexium Antitrust Litig.*; 777 F.3d 9, 14, 17 (1st Cir. 2015); *Kohen v. Pac. Mgmt Co.*, 571 F.3d 672, 676 (7th Cir. 2009).

negotiations with Macy's, and by approving the Settlement.  Plaintiff's interests are aligned with all members of the Settlement Class, as all of their claims arise from the same Cyber Attack.

Second, Plaintiff has retained counsel who are qualified and experienced to litigate this action.   While "the adequacy of class counsel is presumed" absent contrary evidence, proposed Class Counsel have significant experience[7] handling class actions, product liability cases, and complex litigation. *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 540 (S.D. Fla. 2015). Class Counsel have represented plaintiffs in numerous class action cases over the past decade and are partners in a respected firm commonly involved in complex litigation. Moreover, Class Counsel exhibited the desire and expertise to vigorously prosecute this class action and to successfully negotiate a compromise of this litigation. The requirement is thus met.

### 2.      *The Settlement Class Meets the Requirements of Rule 23(b)(3)*

In addition to satisfying Rule 23(a), the Settlement Class satisfies the certification requirements of, and therefore should be certified under, Rule 23(b)(3).   The Parties agree that the Settlement Class may be certified under Rule 23(b)(3) for settlement purposes, which "permits class certification if 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods

---

[7] Plaintiff's counsel have served as counsel in multiple putative and certified class actions, including: *BS Steaks LLC, et al. v. US Foods, Inc.*, (Case No. 18-CV-968-1) Superior Court Dougherty County, Georgia; *Grilling the Dream, Inc. et al. v. Sysco Corporation*, (Case No. 17-CV-1192-1); *In & Out Welders, Inc.. v. Sunbelt Rentals* (Case No. 1:14-cv-1376-1); *Hunters Run Apartments, LTD et al. v. WCA Waste Corporation, et al.*, Case No. 1:15-cv-151 (N.D. Fla.); *Whitton v. Deffenbaugh Disposal Inc.,* Case No. 12-2246-CM (D. Kan.); *Danny Lynn Electric & Plumbing et al. v. Veolia ES Solid Waste Southeast, Inc. et al.*, Case No. 2:09-cv-192-MHT (M.D. Ala); *Janoka, Inc. et al. v. Veolia Environmental Services North America Corp.*, Case No. 2011-900056 (Circuit Court of Barbour County, Alabama); *Eufaula Drugs, Inc. v. TDI Managed Care Services, Inc.*, Case No.: 2:05-CV-0293-MEF (M.D. Ala.).

for fairly and efficiently adjudicating the controversy.'" *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting Fed. R. Civ. P. 23(b)(3) (emphasis original)). These are commonly referred to as the predominance and superiority requirements.

        a.     <u>Common Issues of Law and Fact Predominate Over Individual Issues.</u>

Rule 23(b)(3) requires that a plaintiff show that "questions of law or fact common to class members predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3). Class action status is appropriate where common questions represent a significant aspect of a case and they can be resolved in a single action. *See* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1778, at 528 (2d ed. 1986). Common questions, however, need not be dispositive of the entire action, because to "predominate" under the Rule does not mean to be "determinative." *Id*. at 528-29.

Here, common issues predominate because they "have a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . monetary relief." *Carriuolo v. GM Co.*, 823 F.3d 977, 985 (11th Cir. 2016). Predominance does not require that all questions be common, but rather that "a significant aspect of the case . . . can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998) (internal quotations omitted). Notably, any individual issues that relate to damages does not defeat predominance. *Brown v. Electrolux Home Prods., Inc*., 817 F.3d 1225, 1239 (11th Cir. 2016) ("The 'black letter rule' recognized in every circuit is that 'individual damage calculations generally do not defeat a finding that common issues predominate.'"). Each member of the Settlement Class's claim arises out of the Cyber Attack and concern the security of information stored on online customer profiles.  This is the "significant aspect" of the case that is

resolved by this Agreement. The only individual issues here relate to damages. The predominance requirement is met here because the overwhelming issues of law and fact are common to all class members.

          b.     <u>Class-wide Resolution Is Superior to Separate Individual Actions.</u>

In deciding superiority, the Court must consider at least some of the factors set forth in Rule 23(b)(3), including: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1278, n. 19 (11th Cir. 2009). Here, the resolution of a single, nationwide class action is superior to tens of thousands of individual cases with damages that will "be too small for a separate action by each class member." *Carriuolo*, 823 F.3d at 989; *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 541 (S.D. Fla. 2015) ("the Court finds that a class action is a superior method of adjudication in this case. First, the number of class members here—in the hundreds or thousands—is too large for the prosecution of separate actions by each class member to be likely, practical, or desirable."). Litigating the claims of thousands of members of the Settlement Class, requiring presentation of the same evidence and expert opinions over and over again, would be inefficient. *See In re Checking Account Overdraft Litig.*, 275 F.R.D. 666, 679 (S.D. Fla. 2011) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . most of the plaintiffs would have no realistic day in court if a class action were not available.").

This case presents no manageability concerns greater than any other settlement of a class action for damages; in fact, the availability of a direct notice mechanism to Settlement Class Members through records maintained by Macy's makes manageability less of a concern here than in other consumer class actions. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems[.]"). "Because common questions of law and fact predominate, class-wide adjudication appropriately conserves judicial resources and advances society's interests in judicial efficiency." *Carriuolo*, 823 F.3d at 989 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982). Certification of this class action for settlement purposes is superior to alternative methods of adjudication. In sum, the Settlement Class's claims satisfy the Rule 23(b)(3) requirements, and should be certified.

### E.     The Proposed Class Notice is Adequate.

Rule 23(e) provides that "notice of the proposed ... compromise shall be given to all members of the class in such manner as the court directs." Due process likewise requires that class members be given notice and an opportunity to be heard. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). The method and manner of notice process is "left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975), *cert. denied*, 423 U.S. 864 (1975).

Notification by electronic means, including email notification, is both routine and common. *See Morgan v. Pub. Storage*, 301 F. Supp. 3d 1237, 1262 (S.D. Fla. 2016) ("Courts have routinely held that notice programs that provide notice through a variety of media, including through email notice, satisfy the requirements." (collecting cases)); *see also Stuven v. Texas de Brazil (Tampa) Corp.*, No. 8:12-CV-1283-T-24TGW, 2013 WL 610651, at *6 (M.D. Fla. Feb. 19, 2013). Further, "email notification is particularly appropriate where [as here] a majority of the defendant's contact

and communications with class members occur electronically." *Morgan*, 301 F. Supp. 3d at 1263. In fact, the Federal Rules of Civil Procedure were amended to specifically recognize the modern day reality of electronic notice and now provide that "notice may be by one or more of the following . . . electronic means [] or other appropriate means." *See* Fed. R. Civ. P. 23(c).

Each member of the Settlement Class is, by definition, one to whom Macy's sent a notice in July 2018 concerning suspected unauthorized activity as a result of the Cyber Attack. Thus, the contact information for each Settlement Class member is known. Macy's has access to last-known contact information for each Settlement Class Member, including last known email addresses and/or mailing addresses. The Parties, therefore, propose to notify the Settlement Class individually by direct email to each member of the Settlement Class for which an email address is available. The email notice will include the Summary Notice in the body of the email and a link to the Settlement Website (on which the Settlement Class Member may submit a claim electronically); for Settlement Class Members for which an email address is unavailable, the Settlement Administrator will send the Summary Postcard Notice via U.S. mail; and in the event of an email notice "bounceback," the Settlement Administrator will send the Settlement Class Member the Summary Postcard Notice via U.S. mail. More detail regarding the Notice Program is set forth in the attached declaration of the proposed Settlement Administrator. *See* Ex. D. Copies of the Summary Notice and the Summary Postcard Notice are attached as Exhibits B (Summary Notice) and G (Postcard Notice).

The Class Notice satisfies Rule 23's directives and the due process clause requirements because the Settlement Class will be alerted to and informed about the Settlement, their rights, and their opportunity to appear and be heard at the Final Approval Hearing. *See Mashburn v. Nat'l Healthcare Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988). Finally, the parties have chosen KCC

to serve as the Claims Administrator in this matter based on its experience and expertise in the area of data breach notice and claims administration in particular.  *See* Ex. D (KCC Declaration).

Finally, as set forth above in Section III (E), *supra*, notice to the Settlement Class is justified pursuant to Rule 23(e)(1).

### F.      The Court Should Appoint the Proposed Class Counsel

Under Federal Rule of Civil Procedure 23(g), "a court that certifies a class must appoint class counsel." In appointing class counsel, the court must consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

The proposed Class Counsel regularly engage in consumer class action litigation and other complex litigation similar to the present action, and they have dedicated substantial resources to the prosecution of this action. Moreover, counsel have vigorously and competently represented the Plaintiff and Settlement Class Members' interests in this action and will continue to fulfill their duties to the class.

### IV.      CONCLUSION

For all of the foregoing reasons, the Plaintiff, by her counsel, requests that the Court grant her Motion and enter the order proposed (attached hereto as Exhibit E) by the parties to: (1) preliminarily approve the proposed settlement; (2) certify the proposed settlement class; (3) appoint Class Counsel, and (4) approve the proposed notice program.

Respectfully submitted this 17th day of July, 2019.

*/s/ Nicholas W. Armstrong*
Oscar M. Price, IV
Nicholas W. Armstrong
**Price Armstrong, LLC**
2226 First Avenue South, Suite 105
Birmingham, AL 35233
Telephone: (205) 208-9588
Facsimile: (205) 208-9598
oscar@pricearmstrong.com
nick@pricearmstrong.com

*Counsel for Plaintiff and the
proposed Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 17th day of July, 2019, I electronically filed the foregoing

document with the Clerk of Court by using the CM/ECF system, and a copy of the foregoing

document has been electronically mailed to all attorneys of record.

*/s/ Nicholas W. Armstrong*
Oscar M. Price, IV
Nicholas W. Armstrong
**Price Armstrong, LLC**
2226 First Avenue South, Suite 105
Birmingham, AL 35233
Telephone: (205) 208-9588
Facsimile: (205) 208-9598
oscar@pricearmstrong.com
nick@pricearmstrong.com

*Counsel for Plaintiff*