## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **ANNA CARROLL,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:18-cv-01060-RDP** |
| | } | |
| **MACY'S, INC. et al.,** | } | |
| | } | |
| **Defendants.** | } | |

## <u>MEMORANDUM OPINION</u>

This matter is before the court on Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement and Final Certification of Class for Settlement and Unopposed Motion for Award of Attorneys' Fees and Expenses, both filed on March 31, 2020. (Docs. # 38, 40).[1] The court preliminarily approved the Parties' proposed Settlement Agreement on August 19, 2019 and set a hearing for Final Approval. (Doc. # 37). Although there are no objections to the proposed settlement, the court has rigorously analyzed whether it is due to be approved.

On June 2, 2020, the court held a Final Approval Hearing to determine: (1) whether the settlement is fair, reasonable, and adequate; (2) whether the Class should be certified; and (3) whether judgment should be entered dismissing all claims in the Amended Complaint with prejudice. The hearing was held pursuant to Federal Rule of Civil Procedure 23(e)(1)(A), which mandates judicial review of any "settlement, voluntary dismissal, or compromise of the claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e)(1)(A). The court has now thoroughly examined and considered (1) the Parties' briefs and evidentiary submissions, (2) the arguments

---

[1] Unless otherwise indicated, capitalized terms used herein have the same meaning as in the Settlement document.

and evidence presented at the final fairness hearing, and (3) the court's own review of the case and procedural record. For the following reasons, and after careful review, the court concludes that the proposed Class Action Settlement is fair, reasonable, and adequate and is due to be approved. Accordingly, the court will enter Final Judgment which certifies the Class, approves the Class Action Settlement in full, awards the Class Representative's incentive fee, and awards attorneys' fees. The court also makes the findings of fact and conclusions of law set forth below.

## I.       Procedural Background

### 1.       The Claims

Macy's is a retail department store selling merchandise to the public through its brick and mortar stores, as well as through its online store—www.macys.com. A Cyber Attack on Macy's occurred from May 1, 2018 through June 11, 2018, which involved unauthorized access or unauthorized attempted access to online customer profiles -- and Personal Information associated with those profiles -- using valid user credentials. In July 2018, Macy's gave notice of the Cyber Attack.

On July 9, 2018, Plaintiff filed her initial complaint in this Court. (Doc. # 1). On October 9, 2018, Macy's filed its first motion to dismiss. (Doc. # 11). On October 19, 2018, Plaintiff filed an Amended Complaint (which, because it is the operative complaint in this action, the court will refer to it as the "Complaint"), alleging negligence and a violation of Alabama's Deceptive Trade Practices Act.[2] (Doc. # 13). Plaintiff sought certification of a class, which the court preliminarily approved on August 19, 2019. (Doc. # 37 at 2).

---

[2] Macy's has denied all material allegations in the Complaint, and Macy's specifically denies that it is in any way liable for the Cyber Attack. Nevertheless, given the risks, uncertainties, burden, and expense of continued litigation, Macy's has agreed to settle this litigation on the terms set forth in the Settlement Agreement, subject to court approval.

On January 30, 2019, the Parties mediated their dispute and reached a settlement in principle after a mediation session with JAMS mediator Jeffrey Grubman, Esq., in Miami, Florida. Prior to and during this mediation, Macy's shared specific and detailed information with Class Counsel about the Cyber Attack. The Parties also engaged in a number of conferences between themselves about the potential resolution of this case. Those discussions occurred before, during, and after the mediation. The Parties kept the court informed about their efforts by filing Joint Reports. (*See* Docs. # 27, 29, 31). On July 17, 2019, the Parties presented an unopposed motion for preliminary approval of their settlement on behalf of the class. (Doc. # 34). And, on August 19, 2019, the court granted preliminary approval (Doc. # 37), which incorporated the deadlines the Parties proposed in their Joint Report filed shortly before that (Doc. # 36).

      **2.**      **Structure of the Settlement**

The terms of the proposed Settlement Agreement are as follows:

The Settlement seeks to resolve the claims of all individuals to whom Macy's sent notice of the Cyber Attack in July 2018. In particular, the Settlement provides significant and valuable benefits to Settlement Class Members and squarely addresses the issues raised in the Litigation. The Settlement provides monetary payments to Settlement Class Members who submit valid Claim Forms. Settlement Class Members submitting valid Claim Forms have two options to receive a monetary payment:

    1.   <u>Documented Expenses and Lost Time:</u> Reimbursement for documented out-of-pocket expenses and lost time that were incurred as a result of the Cyber Attack for one or more of the following, not to exceed a total of $1,500.00 per Settlement Class Member: (i) costs and expenses spent addressing identity theft or fraud; (ii) preventative costs including purchasing credit monitoring, placing security freezes on credit reports, or requesting copies of credit reports for review; (iii) other documented losses that were not reimbursed; and (iv) up to five hours of documented time spent dealing with the repercussions of the Cyber Attack (calculated at the rate of $15.00 per hour); and/or

    2.   <u>Undocumented Time Spent:</u> Any Settlement Class Member who spent time dealing with repercussions of the Cyber Attack, but does not have documentation of such time, will be eligible to submit a Settlement Claim for time spent in an amount of $15 per hour up to two hours (for a total of $30).

Settlement Class Members who submit a valid Claim Form are eligible to seek reimbursement under both option "1" and "2" above for an amount not to exceed a total of $1,530. For all Approved Claims, Macy's shall pay a total of $192,500. . . . Macy's will pay attorneys' fees, costs and expenses, and a service award as set forth in the Settlement *on top of this amount*.[3] As part of the consideration for this Settlement, upon final approval, it is agreed that Plaintiff and all Settlement Class Members who do not validly opt out shall be deemed to have released all claims against Macy's based on, relating to, concerning, or arising out of the Cyber Attack or the allegations, facts, or circumstances described in the Litigation and/or Complaint, as set forth in more detail in Section VII of the Settlement.

(Doc. # 39 at 4-5) (emphasis in original).

### 3.    Notice and Response to the Settlement from the Class

After the court preliminarily approved the Settlement, notice was issued to members of the Settlement Class. Notice was provided as follows: (1) all Settlement Class Members were sent an email containing the Summary Notice and a link to the Settlement Website (on which Settlement Class Members could submit claims electronically); (2) for Settlement Class Members for which an email address was unavailable, they were sent the Summary Postcard Notice via U.S. mail; and (3) in the event of an email notice "bounceback," the Settlement Administrator sent the Settlement Class Member the Summary Postcard Notice via U.S. mail.

The Summary Notice directed Settlement Class Members to the Settlement Website (http://www.mcomsettlement.com), where they could access the Claim Form and file a claim electronically. The Settlement Website also provided electronic access to relevant case documents, including the Long Notice, which described the terms of the Settlement in detail and explained that Class Counsel planned to move for final approval and seek attorneys' fees, costs, and an incentive award for the named Plaintiff. The Settlement Website also provided other pertinent

---

[3] Specifically, on top of the $192,500.00 to pay all Approved Claims, Macy's has agreed to pay up to $60,000.00 in attorneys' fees, up to $2,500.00 in costs and expenses, and up to $2,500.00 as an incentive award to Plaintiff.

information, including: (1) Settlement Class Members' right to opt out or object (and the deadlines and instructions for doing so); (2) notice of the Final Approval Hearing date, time, and location;[4] and (3) a toll free telephone number that Settlement Website visitors could call for more information or questions about the Settlement (this toll free number was also included on the Summary Notice and Long Notice). Notice was also made pursuant to the Class Action Fairness Act to, among others, the U.S. Attorney General and the attorneys general of all 50 states.

The deadline to opt out of the Settlement was January 7, 2020, and the deadline to file an objection was January 8, 2020 (if submitted electronically via CM/ECF) or January 3, 2020 (if sent via U.S. Mail). There have been no objections from any interested party, and only three Settlement Class Members have opted out. (Doc. # 39 at 2).

The deadline to file a claim expired on April 6, 2020. (Doc. # 37 at 10). But, according to Class Counsel, KCC Class Action Services LLC remains in the preliminary stages of its review. For claims submitted through January 31, 2020, KCC has preliminarily validated 2,821 claims (the "Initial Claims").[5] Of these Initial Claims:

a. 2,745 claims selected only the undocumented time option on the Claim Form. The undocumented time option allows for a maximum of 2 hours claimed at $15.00 per hour, for a total of at least $130,710.00 based on preliminary review.

b. 76 claims were submitted with documentation supporting out-of-pocket losses as a result of the Cyber Attack or spent time dealing with the repercussions of the Cyber Attack. KCC is still reviewing the documentation for these claims[,] and if KCC determines the documentation does not support the amount of documented claimed (up to $1,500.00)[,] the claimants will receive a deficiency letter requesting additional documentation.

---

[4] During the Final Approval Hearing, the Parties informed the court that, approximately three days after the Hearing was rescheduled, the information on the Settlement Website was updated to reflect the new Hearing date. (Doc. # 43).

[5] These Initial Claims were identified following a preliminary validation process implemented to ensure that the claimant is a Settlement Class Member. KCC implemented this process because the volume of claims submitted far exceeded anticipated amounts (*i.e.*, more than 25,000 claims were submitted by January 31, 2020). This preliminary validation process is described in detail in the Settlement Administrator's declaration. (Doc. # 39-1 at 4-6).

(Doc. # 39-1 at 6).

Pursuant to the notice requirements set forth in the Settlement Agreement and in the Preliminary Approval Order, the court is satisfied that Settlement Class Members were properly notified of the terms of the proposed Settlement Agreement, of the right to opt-out and the right to object to the Settlement Agreement, and of the right to be heard at the Final Approval Hearing. (Doc. # 39-1 at 12-26).

## II.     Findings Related to the Settlement Class

The court makes the following findings of fact:

**1.**     The court has jurisdiction over the subject matter of this Action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Moreover, this court has personal jurisdiction over the defendant, Macy's.

**2.**     Since the court's preliminary approval of this Class Action Settlement, notice has been directed to all Settlement Class Members in accordance with the court's Preliminary Approval Order (Doc. # 37). (*See* Declaration of Meagan Brunner ("Brunner Decl.") (Doc. # 39-1).

**3.**     The Settlement Class is defined as follows:

> All residents of the United States who Macy's sent a notification in July 2018 concerning suspected unauthorized activity as a result of the Cyber Attack.  The Settlement Class specifically excludes: (i) Macy's and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge or Magistrate Judge to whom the action is assigned and any member of those Judges' staffs or immediate family members; and (iv) any other person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Cyber Attack or who pleads *nolo contendere* to any such charge.

**4.**     As discussed in detail below, the court finds, for settlement purposes only, that: (a)

the Settlement Class Members are so numerous as to make joinder of them impracticable;[6] (b) there are questions of fact and law common to the Settlement Class;[7] (c) Class Representative's claims and the defenses asserted by Defendants to those claims are typical of the claims of Settlement Class Members and the defenses asserted thereto;[8] (d) Class Representative and Class Counsel have fairly and adequately protected the interests of Settlement Class Members throughout this action;[9] and (e) a class action is superior to all other available methods for fairly and efficiently resolving this action and provides substantial benefits to both the litigants and the court. The court therefore concludes that this action satisfies the prerequisites for class certification for purposes of settlement, pursuant to Federal Rule of Civil Procedure 23(a), (b)(3), and the court certifies the Settlement Class for settlement purposes.

5.      The Notice: (i) constituted the best practicable notice to members of the Settlement Class; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the action, the terms of the Settlement, their right to object and to appear at the Final Fairness Hearing or to exclude themselves from the Settlement, and the binding effect of the Settlement; (iii) was reasonable and constituted due, adequate, and

---

[6] As of January 31, 2020, KCC preliminarily validated 2,821 claims (out of approximately 25,000 submitted). (Doc. # 39 at 7 n.5). Therefore, the court concludes that the class is sufficiently numerous.

[7] For example, a common question presented here is whether Macy's was negligent in allowing Plaintiff's (and other Settlement Class Members') personal identifying information to be stolen by the Cyber Attack, and whether, in connection with the Cyber Attack, Macy's violated the Alabama Deceptive Trade Practices Act.

[8] Here, the claims alleged against Macy's adversely affected Plaintiff and other Settlement Class Members "in the same general fashion." Thus, the court finds, for purposes of this settlement, that their claims are indeed typical of the claims of the entire class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see Dujanovic v. MortgageAmerica, Inc.*, 185 F.R.D. 660, 667 (N.D. Ala. 1999) (finding that the typicality prerequisite was satisfied where the plaintiff alleged a harm that was caused by defendant's policies and practices). Moreover, no evidence has been brought to the court's attention that indicates there are unusual circumstances or unique facts concerning Plaintiff's claims that would render them atypical of the claims of all Settlement Class Members.

[9] Class Counsel are experienced and have proven their dedication to the Class through their work in this case. Moreover, Plaintiff's interests are aligned with the Class, and Plaintiff is sufficiently interested in the outcome of the case. There are no actual or potential conflicts of interest.

sufficient notice to persons affected by and/or entitled to participate in the Settlement and Final Fairness Hearing; and (iv) fully complied with the requirements of due process and Federal Rule of Civil Procedure 23.

6.     As of March 31, 2020, three (3) potential Settlement Class Members have opted out of the Settlement, and no objections to the Settlement have been filed.

7.     Based on the record before it, the court finds that the Class Action Settlement is the product of good faith, arm's-length negotiations between the Parties.

8.     Also based on the record before it, the court finds that the Class Action Settlement, as provided for in the Settlement Agreement, is in all respects fair, reasonable, adequate, and proper, and it is in the best interest of the Settlement Class.

9.     The proposed class also meets the requirements of Rule 23(b)(3). That is, "the questions of law or fact common to the members of the class predominate" over individual issues of law or fact and that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b).

10.      Plaintiff Anna Carroll is hereby certified as Settlement Class Representative, and Nicholas Armstrong and Oscar M. Price IV of Price Armstrong LLC are appointed as Class Counsel ("Class Counsel"). The court specifically finds that Class Counsel and the Settlement Class Representative have fairly and adequately represented the Settlement Class with respect to the Settlement.

## III.    Analysis of the Fairness, Adequacy, and Reasonableness of the Proposed Settlement

"Public policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Class action settlements require court approval, and "such approval is committed

to the sound discretion of the district court." *Id.* (citing Fed. R. Civ. P. 23(e)). "The court must be exacting and thorough in analyzing whether the settlement is in the best interests of class members." *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 843 (E.D. La. 2007) (citing *Manual for Complex Litigation* (Fourth) § 21.61 (2004)). "The [c]ourt may not resolve contested issues of fact or law[] but instead is concerned with the overall fairness, reasonableness, and adequacy of the proposed settlement as compared to the alternative of litigation." *Turner*, 472 F. Supp. 2d at 843.

The Eleventh Circuit has set forth six factors courts are to consider in determining whether a proposed settlement is fair, adequate, and reasonable: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647, *2 (N.D. Ala. Feb. 5, 2015) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). The court concludes that these factors all weigh in favor of approving the Class Action Settlement.

**1.      The Likelihood of Success at Trial**

"The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1319 (S.D. Fla. 2005). In evaluating this factor, the court has not reached any ultimate conclusions with respect to issues of fact or law involved in the case. Rather, this factor weighs in favor of approval where there was "no guarantee that the plaintiffs would prevail at trial on their [] claims." *Camp v. City of Pelham*, 2014 WL 1764919, at *3 (N.D. Ala. May 1, 2014).

The court has not previously weighed in on the merits, risks, or likelihood of success at trial. And, while Counsel for both Parties have become familiar with the legal and factual issues presented in this case, there remains much to be done before any final resolution of this case could occur. Here, the legal and factual issues presented in this case were hotly contested and "would almost certainly continue to be hotly contested throughout the remaining litigation." *Parsons*, 2015 WL 13629647, at *3. Because "the outcome on class certification and the ultimate outcome on the merits [was] uncertain for both [p]arties," a settlement was reached and here that is appropriate. *Id.* at *2. Thus, the court concludes that this factor weighs in favor of approving the Settlement.

### 2.      The Range of Possible Recovery and the Point On or Below the Range of Possible Recovery at Which the Settlement is Fair, Adequate, and Reasonable

The second and third factors are "easily combined and normally considered in concert." *Camp*, 2014 WL 1764919, at *3. "The [c]ourt's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation[] but to evaluate the proposed settlement in its totality." *Lipuma*, 406 F. Supp. 2d at 1323. The range of outcomes extends from no liability to total victory and must be considered in light of the attendant risks. *See, e.g.*, *Beaty v. Contl. Auto. Sys. U.S., Inc.*, 2012 WL 12895014, *8 (N.D. Ala. Feb. 6, 2012). Even a minimal settlement can be approved. *See, e.g.*, *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.").

Here, the Settlement provides significant relief to Settlement Class Members. Individuals to whom Macy's sent a notification of potential unauthorized activity as a result of the Cyber Attack (*i.e.*, the Settlement Class) are entitled compensation up to $1,500.00 for claims of documented, out-of-pocket losses incurred as a result of the Cyber Attack and recovery of up to two hours of undocumented time at a rate of $15.00 per hour for time spent dealing with the repercussions of the Cyber Attack. All attorneys' fees, costs and expenses, Settlement

administration costs, and the incentive award will be paid by Defendants on top of this amount (*i.e.*, they will not deplete the settlement fund). Because of the uncertainties surrounding continued litigation, and the fact that settlement provides for certain, immediate relief, the court concludes that this factor weighs in favor of approving the Settlement.

### 3.      The Complexity, Expense, and Duration of Litigation

A settlement that "will alleviate the need for judicial exploration of . . . complex subjects, reduce litigation costs, and eliminate the significant risk that individual claimants might recover nothing" merits approval. *Lipuma*, 406 F. Supp. 2d at 1324. The court concludes that the Settlement here satisfies this standard. A national class action (such as this one), to be successful, involves extensive discovery and expensive expert involvement; contentious argument and voluminous briefing over certification, summary judgment, and *Daubert* challenges; a lengthy trial; and appeals. *See Parsons*, 2015 WL 13629647, at *4. Due to the factual and legal issues presented in this case, both Parties would likely expend a considerable amount of resources on litigation expenses. Therefore, "[g]iven the nature of this case, any judgment at trial would likely be appealed by the losing party. As a result, continued litigation would have risked delaying the class's potential recovery for years, further reducing the value of any such recovery." *Id.* at *4. These considerations weigh in favor of approving the Settlement.

### 4.      The Substance and Amount of Opposition to the Settlement Agreement

In assessing whether a proposed settlement is fair, adequate, and reasonable, the court must "examine the settlement in light of the objections raised." *Cotton*, 559 F.2d at 1331. "In assessing the fairness of a proposed compromise, the number of objectors is a factor to be considered but is not controlling." *Id*. "Thus, a low percentage of objections [may] point[] to the reasonableness of a proposed settlement and support[] its approval." *Lipuma*, 406 F. Supp. 2d at 1324 (citing *Bennett*,

737 F.2d at 986).

Here, in response to the Notice program (as detailed above), only three Settlement Class Members have opted out and no Settlement Class Member has objected to the Settlement. In addition, no federal or state office has objected to the Settlement. These facts weigh in favor of approving the Settlement. *See Maher v. Zapata Corp.*, 714 F.2d 436, 456-57 (5th Cir. 1983); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1556 (M.D. Fla. 1992).

### 5.      The Stage of Proceedings at Which the Settlement Was Achieved

Courts look at this last factor "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324; *see Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery is required to determine the fairness of the settlement). Plaintiff and Class Counsel have litigated this case at the pleadings stage, investigated the facts and law, briefed the relevant legal issues, and reviewed substantive evidence relating to the claims and defenses. The court concludes that this factor counsels in favor of approving the Settlement because it is not premature.

Consequently, the court concludes that the Settlement is fair, reasonable, and adequate and therefore due to be approved.

## IV.      Propriety of Incentive Payment to Class Representative Carroll

As part of Plaintiff's Unopposed Motion for Final Approval of the Class Action Settlement and Final Certification of Class for Settlement (Doc. # 38), Class Counsel ask the court to award Class Representative Anna Carroll an incentive payment in the amount of $2,500.00. (*Id.*).

Class representative payments "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g.*, *Ingram v. The Coca–Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representative payments); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving $7,500 awards to three representative plaintiffs); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250-51 (S.D. Ohio 1991) (awarding $50,000 to each of 6 class representatives, for an aggregate award of $300,000); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (granting two incentive awards of $55,000 and three incentive awards of $35,000); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 33 (E.D. Pa. 1985) (granting incentive awards of $20,000 to each of two plaintiffs).

The factors for determining a class representative payment include: (1) whether the representative protected the interests of class members and others; (2) the degree to which the class benefitted from those actions; and (3) the amount of time and effort required in pursuing litigation. *See Carnegie v. Mutual Sav. Life Ins. Co.*, 2004 WL 3715446, *24 (N.D. Ala. 2004).

Here, Plaintiff participated in drafting the complaint and amendments, participated in providing evidence to investigate the case, reviewed evidence, and participated remotely in the mediation and follow up settlement discussions. Thus, the court concludes that the incentive payment proposed in this case is not shrouded by a "cloud of collusion," but instead is very

reasonable and warranted in light of the time and effort Plaintiff committed to this litigation, not to mention the resulting benefits to the Settlement Class. *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983).

Therefore, the court finds that the requested incentive payment of $2,500.00 is reasonable and appropriate and due to be approved.[10]

## V.    Attorneys' Fees

The court has reviewed Class Counsel's Unopposed Motion for an Award of Fees and Expenses. (Doc. # 40). Upon consideration of the record and other proceedings at the Final Fairness Hearing and the reasonableness of the requested fee, the court concludes that Class Counsel's Motion (Doc. # 40) is due to be granted.

"The Supreme Court has acknowledged that '[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (citation omitted); *see Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "In considering a fee award in the class action context, the district court has a significant supervisory role." *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999). Courts are given "great latitude in formulating attorneys' fee awards subject only to the necessity of explaining its reasoning." *Id.* (internal quotation omitted). As the Supreme Court explained in *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970):

> While the general American rule is that attorneys' fees are not ordinarily recoverable as costs, both the courts and Congress have developed exceptions to this rule for situations in which overriding considerations indicate the need for such a recovery. A primary judge-created exception has been to award expenses where a plaintiff has successfully maintained a suit, usually on behalf of a class, that benefits a group of others in the same manner as himself. To allow the others to

---

[10] To be sure, this court has previously denied incentive payments to class representatives when appropriate. Here, there is no reason to do so.

14

obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense.

*Mills*, 396 U.S. at 391-92.

"[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Faught v. American Home Shield Corp.*, 668 F.3d 1233, (11th Cir. 2011) (quoting *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 974 (11th Cir. 1991)). Importantly, though, "there is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded a fee because the amount of any fee must be determined upon the facts of each case."[11] *Camden I*, 946 F.2d at 774-75.

Here, Class Counsel request approval of attorneys' fees in the amount of $60,000.00, payable by Macy's under the Settlement. The common fund created under the settlement is the total amount of benefits available to Class Members: $192,500.00 (exclusive of attorneys' fees and expenses). Class Counsel's requested fee ($60,000.00) represents 31.1% of the award to the Settlement Class or 24% of the total fund (which includes attorneys' fees and expenses).[12] However, the requested attorneys' fees do not reduce what the Settlement Class is entitled to recover because the fees are paid on top of (that is, above and beyond) the fund set up for the Settlement Class. Further, the requested fees are within the 25% "benchmark" range of percentages recognized as appropriate by the Eleventh Circuit under *Waters* and *Candem I*.

---

[11] Notably, in this Circuit, common-fund fee awards are properly calculated as a percentage of benefits made available to the class, regardless of whether each class member redeems the benefits made available to class members, or even whether unclaimed benefits revert to the defendant. *See e.g.*, *Waters*, 190 F.3d 1291, 1294-95 (11th Cir. 1999) (upholding an attorney fee award based on the entire settlement fund, even though a portion reverted to the defendant); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 200 (2d Cir. 2007) (holding that in determining counsel fees, trial court erred in calculating percentage of the fund on the basis of claims made against the fund rather than on the entire fund created by efforts of counsel); *Williams v. MGM-Pathe Comm'ncs. Co.*, 129 F.3d 1026 (9th Cir. 1997) (holding that the district court abused its discretion by awarding only one-third of the $10,000 claimed against the common fund rather than one-third of the entire $4.5 million settlement fund in a case where unclaimed funds reverted to the defendant).

[12] In this sense, the combination of the Settlement Fund and the fees is perhaps most properly viewed in totality as a constructive common fund. *See In re Home Depot, Inc.*, 931 F.3d 1065, 1080-81 (11th Cir. 2019).

But, where a requested fee "exceeds 25 percent of the claims," the Eleventh Circuit encourages courts to apply the factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 (1989) to determine the reasonableness of the requested fees in light of the outcome of the case. *Faught*, 668 F.3d at 1242 (citation omitted); *see Camden I*, 946 F.2d at 775 ("[T]he *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases."). The *Johnson* factors include:

> (1) the time and labor required; (2) the difficulty of the issues; (3) the skill required; (4) the preclusion of other employment by the attorney because he accepted the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Faught*, 668 F.3d at 1242-43 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983)). "[O]ther pertinent factors [courts should consider] are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees required by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Allapattah*, 454 F. Supp. 2d at 1202 (citation omitted).

Here, and as explained above, the actual percentage of fees compared to the entire "constructive" common fund is 24%. Therefore, the court need not examine the *Johnson* factors here. Nevertheless, it has evaluated them and finds they support the fee awarded. The court is satisfied that, based on a review of all factors as they relate to this case, Class Counsel's requested fee is fair and reasonable, and due to be granted.

## VI.    Costs and Expenses

In addition to attorneys' fees, Class Counsel requests costs and expenses in the amount of $2,500.00. (Doc. # 40). Class Counsel state that actual expenses were $8,669.50, but that they are only requesting $2,500.00. (Doc. # 40 at 15).

"Plaintiffs' counsel are entitled to be reimbursed for their reasonable expenses when they create a benefit for all class members." *Parsons*, 2015 WL 13629647, at *15 ("Counsel contributed to the creation of the Settlement Fund, and accordingly, are entitled to receive a reimbursement of their out-of-pocket expenses in the [requested] amount.") (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1036 (S.D. Ohio 2001)); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (holding that the plaintiffs' counsel was entitled to the full recovery of their expenses from the common fund).

The court concludes that Class Counsel's costs and expenses were properly incurred and are thus reimbursable. Therefore, Plaintiff's motion as to costs and expenses (Doc. # 40) is due to be granted.

## VII.    Conclusion

For all these reasons, and after careful review and rigorous analysis, the court will enter a separate order which certifies the Settlement Class, approves the Final Settlement, and awards fees, costs, and approves a service payment. The Clerk of Court is **DIRECTED** to close this case.

**DONE** and **ORDERED** this June 5, 2020.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE